**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JUANITA WILLIAMSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-06-833-CH |
| | ) |
| MICHAEL J. ASTRUE,[1] | ) |
| COMMISSIONER OF THE SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Ms. Juanita Williamson, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of Defendant Commissioner's final decision denying her application for disability insurance benefits. Pursuant to 28 U.S.C. § 636(c), the parties have consented to the exercise of jurisdiction over this matter by a United States Magistrate Judge. The Commissioner has answered and filed the administrative record ("AR"), and both parties have briefed their respective positions. The Commissioner's decision is reversed and remanded for further proceedings consistent with this Memorandum Opinion and Order.

**I.   Procedural Background**

Plaintiff protectively filed her application for disability insurance benefits on February 17, 2004. The agency denied the application initially and upon reconsideration. Plaintiff requested an administrative hearing, and the hearing was held on September 7, 2005. An

---

[1] Michael J. Astrue became Commissioner of the Social Security Administration on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is hereby substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit.

administrative law judge (ALJ) issued an unfavorable decision on February 24, 2006. Plaintiff appealed, and the Appeals Council affirmed the ALJ's decision on June 30, 2006.

## II.     The Administrative Decision

The ALJ applied the five-step sequential evaluation process. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *see also* 20 C.F.R. §416.920.  The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date.  At step two, the ALJ determined that Plaintiff has severe impairments including discoid lupus, status post cellulitis and gangrene of the third and fourth toes on her left foot, hypertension, and obstruction of the left superficial femoral artery.  At step three, the ALJ considered the listings of impairments deemed to be conclusively disabling with "specific emphasis" on the listings at 4.03 (hypertensive cardiovascular disease)[2] and 4.11 (chronic venous insufficiency to the lower extremity).  The ALJ determined that Plaintiff's severe physical impairments do not meet or equal any impairment listed in Appendix 1 to Subpart P, Regulations No. 4.[3]

The ALJ next determined Plaintiff's residual functional capacity. The ALJ found that Plaintiff has the residual functional capacity to perform sedentary work. Because Plaintiff's past relevant work was unskilled with light to medium exertional requirements, the ALJ further determined at step four that Plaintiff cannot return to her past relevant work.

---

[2]Effective April 1, 2007, the listing at § 4.03 was deleted because it directed adjudicators to evaluate the impairment and its effects under other listings. *See* 71 F.R. 2312 at 2318.

[3]*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

At step five, the ALJ found that Plaintiff could perform the jobs of order clerk, assembler and machine operator, jobs which the ALJ found to exist in significant numbers both in the regional and national economies. Based on these findings, the ALJ determined that Plaintiff is not disabled within the meaning of the Social Security Act.

### III.  Issue Presented for Judicial Review

Plaintiff presents one issue for judicial review: whether the ALJ erred in failing to specifically mention and discuss the listing at 4.12 (peripheral arterial disease) at step three of the sequential evaluation.

### IV.  Standard of Review

Because the Appeals Council denied review of the ALJ's decision, that decision is the Commissioner's final decision for purposes of this appeal. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal* 331 F.3d at 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but the court does not reweigh the

evidence or substitute its own judgment for that of the Commissioner. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

## V.     Analysis

At step three of the sequential evaluation, the ALJ must determine "'whether the impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity.'" *Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007) (*quoting Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. *Id.* To demonstrate that an impairment or combination of impairments meets a listing, a claimant must "provide specific medical findings that support each of the various requisite criteria for the impairment." *Id.*

Plaintiff contends that the ALJ erred in failing to specifically identify and discuss the listing at 4.12 (peripheral arterial disease) at step three of the sequential evaluation. This point is well-taken in light of the medical evidence.

Plaintiff has produced medical evidence in the form of a Doppler study showing an ankle-brachial systolic blood pressure ratio of less than .50. The test in question was performed on February 11, 2004, by Dr. Robert D. Okada. Dr. Okada reported that the pressure volume recording for Plaintiff's left ankle was severely attenuated and that the ankle-brachial index for Plaintiff's left leg was .42. AR 145.

The Doppler study was among a battery of tests conducted because of Plaintiff's chronic problems with toes on her left foot. In November 2003, Plaintiff stubbed the toes

on her left foot, and two of her toes became sore and would not heal. In December 2003, she was diagnosed with dry gangrene in two toes. In January 2004, Plaintiff was admitted to St. John's Sapulpa Hospital and was diagnosed with cellulitis and probable osteomyelitis of the toes.

After her release from the hospital, Plaintiff saw Dr. Roger L. Kinney who reported that Plaintiff was complaining of continued pain in her left foot. Dr. Kinney reported that Plaintiff was ready to have her toe amputated. Dr. Kinney's notes reflect his decision to wait another week before performing surgery to see if Plaintiff's toe would heal.

Plaintiff then made an appointment with Dr. Newell, a rheumatologist. Dr. Newell's initial impression was "Dry gangrene of the left third and fourth toes presumably from ischemic necrosis related to her underlying lupus." AR 139. Dr. Newell ordered a number of medical tests on February 9, 2004, including the Doppler study performed by Dr. Okada. One of the tests indicated an occlusion of the distal left superficial femoral/proximal left popliteal artery (AR 142-143), and Plaintiff was referred to Dr. Robert Mammana. On February 18, 2004, Dr. Mammana performed an arterial bypass of the affected artery to improve the flow of blood to Plaintiff's lower left extremity. In March 2004, Dr. Mammana saw Plaintiff as a follow-up to the surgery and reported that Plaintiff was doing quite well. He observed that she does have some foot discomfort with activity but that "this seems to be getting better." AR 170. After the bypass graft surgery, her ankle-brachial index improved. AR 204.

On June 7, 2004, Plaintiff underwent a consultive examination at the request of the Agency. Dr. Jerry First, the consultive examiner, reported that Plaintiff was continuing to experience pain and swelling in her left foot and let. He reported that Plaintiff has "exquisite tenderness" in the fourth toe of her left foot where the "distal segment just feel off." AR 199. At that time, Plaintiff's reported medications included hydrocodone and morphine for pain. AR 200. Dr. First ordered a series of arterial Doppler flow studies of Plaintiff's left leg and concluded that, despite the arterial bypass surgery, Plaintiff exhibited symptoms of peripheral vascular disease. AR 204.

On September 12, 2005, the ALJ submitted Plaintiff's medical records to a medical expert, Dr. S. Krishnamurthi, along with interrogatories. AR 292-294. In response to the first interrogatory, asking whether Plaintiff has an impairment or combination of impairments which meets or equals a listed impairment, Dr. Krishnamurthi answered "no" without further detail. Dr. Krishnamurthi also completed two Physical Medical Source Statements, one for the period from February 13, 2003, through November 1, 2003, and one for the period from November 1, 2003, through September 27, 2005. AR 295-300. At the end of the second medical source statement, Dr. Krishnamurthi jotted several notes including a reference to several listings. AR 300 ("Listing 4.12, 14.02, 12.04, 7.02"). The import of the end note is not entirely clear, but it may be an indication of the listings Dr. Krishnamurthi considered relevant. Nevertheless, Dr. Krishnamurthi's medical source statements only provide functional capacity findings. The ALJ, in rendering his decision, specifically cited Dr.

Krishnamurthi's medical source statements indicating that Plaintiff could perform sedentary work activity and likewise found Plaintiff's RFC limits her to sedentary work. AR 19.

Plaintiff has consistently complained of pain and swelling in her left, lower leg and toes. The pain in her toes was diagnosed as ischemic in nature, initially caused by ten centimeter segmental occlusion of the distal left superficial femoral /proximal left popliteal artery identified by the aortogram and outflow study conducted on February 9, 2004. AR 143. The clinical history noted on the report of the aortogram was "systemic lupus erythematosis, gangrenous left third and fourth toes." AR 142. One of Plaintiff's treating physicians also attributed Plaintiff's left foot problems to lupus. Dr. Newell's impression upon examination was "ischemic necrosis related to her underlying lupus." AR 139.

During the administrative hearing, Plaintiff testified that her left leg is partially numb, that it still swells, and that she has to elevate her leg two or three times per day to reduce the swelling. AR 318.

At step three, the ALJ made a conclusory finding that Plaintiff's impairments did not meet or equal the severity of any listed impairment. The ALJ did not discuss the evidence but stated only that he gave "specific emphasis" to listing 4.03 (hypertensive cardiovascular disease) and 4.11 (chronic venous insufficiency to the lower extremity). He did not, however, identify listing 4.12 for peripheral arterial disease, a listing clearly relevant to Plaintiff's severe circulatory impairments.[4]  *See Clifton v. Chater*, 79 F.3d 1007 (10th Cir.

---

[4] Notably, the two listings to which the ALJ says he gave "special emphasis" were not ones identified by Dr. Krishnamurthi in his notes.

1996) (remanding where ALJ "did not discuss the evidence or his reasons for determining that [claimant] was not disabled at step three, or even identify the relevant Listing or Listings"); *see also Dye v. Barnhart*, 180 Fed. Appx. 27 (10th Cir. 2006) (unpublished op.) (remanding where ALJ's consideration of cardiac listings was too conclusory and therefore beyond meaningful judicial review). The ALJ committed error when he did not identify 4.12 as a relevant listing and determine, based on the medical evidence, whether Plaintiff's impairments met or medically equaled the listing. Based on the administrative record, the Court cannot determine, as the Commissioner argues, that this was harmless error. *Cp. Fischer-Ross v. Barnhart*, 431 F.3d 729 (10th Cir. 2005) (remand not required "when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review" and "no reasonable factfinder could conclude otherwise"); *Dye v. Barnhart*, *supra* at 29-31 (remand required where no findings by the ALJ affirmatively establish that claimant could not meet the relevant listing requirements; ALJ's RFC findings were unhelpful because they dealt with the claimant's functional limitations which were not directly related to the medical requirements of the relevant listing).

When the ALJ rendered his decision, the listing at 4.12 required a claimant to show that she (1) had been diagnosed with peripheral arterial disease, (2) was experiencing intermittent claudication, and (3) could demonstrate restricted blood flow to the affected extremity through medical diagnostic measurements:

4.12 *Peripheral arterial disease*. With one of the following:

>A. Intermittent claudication with failure to visualize (on arteriogram obtained independent of Social Security disability evaluation) the common femoral or deep femoral artery in one extremity;
>
>or
>
>B. Intermittent claudication with marked impairment of peripheral arterial circulation as determined by Doppler studies showing:
>
>>1. Resting ankle/brachial systolic blood pressure ratio of less than 0.50;
>
>or
>
>>2. Decrease in systolic blood pressure at the ankle on exercise (see 4.00E4) of 50 percent or more of pre-exercise level at the ankle, and requiring 10 minutes or more to return to pre-exercise level.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.12 (effective April 1, 2005).

The medical evidence demonstrates that Plaintiff's resting ankle/brachial systolic blood pressure ratio was less than .50 before she underwent surgery to restore blood flow to her left lower extremity. The medical records do not contain evidence indicating that Plaintiff ever complained of intermittent claudication – a requirement for the listing at § 4.12. "Intermittent claudication," is cramp-like muscular pains, usually in the calf muscles of the legs, brought on by exercise and relieved by rest.[5] But the fact that the record does not indicate that Plaintiff complained of intermittent claudication does not necessarily mean that her severe impairment was not the medical equivalent of the listing at § 4.12. Agency regulations provide that medical equivalence can be determined in three ways, the first of which is relevant to this case.

---

[5] *See* "PAD-Peripheral Arterial Disease and Claudication" <http://www.vascularweb.org> and "Claudication: when Circulation Problems Cause Leg Pain" <http://www.mayoclinic.com/health/claudication/HQ01238>.

>    (b)   How do we determine medical equivalence?  We can find medical equivalence . . .
>
>    (1) (i) If you have an impairment that is described in appendix 1, but --
>
>    (A) You do not exhibit one or more of the findings specified in the particular listing, or
>
>    (B) You exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing,
>
>    (ii) We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.

20 C.F.R. § 404.1526.

As discussed above, Plaintiff's medical records do not specifically reflect that she complained of intermittent claudication.  But the records reflect that she did experience severe pain in her lower leg, which required treatment with narcotics, and she had dry gangrene in the toes of her left foot, which resulted in the loss of part of one toe.  Plaintiff also experienced swelling, numbness and pain in her left, lower extremity which persisted even after her circulation was improved by surgery.  On remand, the Commissioner should consider the medical evidence as it pertains to the relevant listing at § 4.12 to determine whether Plaintiff's severe impairments medically equal the listing.

The decision of the Commissioner is reversed and the cause is remanded for further proceedings consistent with the Memorandum Opinion and Order.

ENTERED this __4th__ day of December, 2007.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE